J.J., Appellant,

v.

**William Robert LUCKOW and City of Minneapolis, Respondents.**

**No. C3–97–1930.**

Court of Appeals of Minnesota.

May 19, 1998.

Review Denied July 16, 1998.

Jeffrey R. Anderson, Barbara J. Felt, Reinhardt and Anderson, St. Paul, for appellant.

Michael S. Kreidler, Leo I. Brisbois, Stich, Angell, Kreidler, Brownson & Ballou, P.A., Minneapolis, for respondent Luckow.

Jay M. Heffern, City Attorney, James A. Moore, Assistant City Attorney, for respondent City of Minneapolis.

Considered and decided by CRIPPEN, P.J., and LANSING and PETERSON, JJ.

## OPINION

CRIPPEN, Judge.

Based on injuries caused by sexual abuse, appellant J.J. commenced this action when he was 24 years old; six years and four days after the abuse ended. In a summary judgment that we affirm, the trial court determined that the statute of limitation expired before appellant brought this action and rejected appellant's contention that he had reason for failing to know he had been sexually abused until he was confronted about the abuse one week after it ended.

## FACTS

The evidence indicates that respondent Luckow sexually abused appellant during several years ending on August 24, 1989, 40 days after appellant turned age 18. Until appellant was questioned six days later about his relationship with Luckow, no one else was aware of the abuse. The two became acquainted through appellant's father, who had

been Luckow's partner in the Minneapolis Police Department.

Appellant commenced this action on August 28, 1995. Noting that appellant did not claim to have repressed his memories of the abuse, the trial court found that at all pertinent times appellant "recalled and understood the details of the abuse." The court concluded that "[a] reasonable person in [appellant's] situation should have known that he had been abused" prior to August 24, 1989.

## ISSUES

1. Did the trial court err in finding that the statute of limitations ran on August 24, 1995?

2. Did appellant's infancy disability prior to July 15, 1989 extend the period of limitation beyond August 24, 1995?

## ANALYSIS

### 1.

■ Generally, the date on which victims of sexual abuse know or have reason to know that they have been abused involves a factual determination and is a question for the trier of fact. *W.J.L. v. Bugge*, 573 N.W.2d 677, 680 (Minn.1998) (citing *Wittmer v. Ruegemer*, 419 N.W.2d 493, 498 (Minn. 1988)). But where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and as a matter of law either party is entitled to judgment, summary judgment is appropriate. *Id.* (quoting Minn. R. Civ. P. 56.03). While the moving party must show that no issues of material fact exist, the nonmoving party may avoid summary judgment by presenting specific facts showing that there is a genuine issue for trial. *Id.* (noting that the nonmoving party cannot rely on allegations in the pleadings or speculate on evidence that might be produced at trial).

■ Appellant asserts that he did not know or have reason to know that he was sexually abused before the police questioned him on August 30, 1989. In determining when appellant knew or should have known he was abused, we are to apply a reasonable person standard. *Id.* at 681. This standard has been adopted by the supreme court in recognition that "[w]hile the manifestation and form of the injury is significant to the victim, it is simply not relevant to the ultimate question of the time at which the complainant knew or should have known that he/she was sexually abused." *Blackowiak v. Kemp*, 546 N.W.2d 1, 3 (Minn.1996).

■ Because of the inseparable interplay between the act of sexual abuse and personal injury, "the victim is immediately put on notice of the causal connection between the abuse and injury." *W.J.L.*, 573 N.W.2d at 681. "Accordingly, the statute of limitations begins to run once a victim is abused unless there is some legal disability, such as the victim's age, or mental disability, such as repressed memory of the abuse, which would make a reasonable person incapable of recognizing or understanding that he or she had been sexually abused." *Id.*

Rejecting the application of a "wholly subjective inquire into [W.J.L.'s] unique circumstance," the supreme court in *W.J.L.* found that W.J.L.'s recollection of being confused by the abuse and her abuser's representation that the misconduct was therapeutic was not helpful in determining when a reasonable person in the same situation should have known of the abuse. *Id.* at 682 (quoting *Blackowiak*, 546 N.W.2d at 3). The court concluded that "[m]erely not thinking about the abuse is not enough to delay the running of the statute of limitations." *Id.* Similarly, in *Blackowiak*, noting that the victim had not discussed his abuse with a counselor because of "shame," the supreme court concluded that recognition of shame is evidence that a psychological injury occurred and that the victim should have known he was injured. 546 N.W.2d at 3.

■ In this case, appellant did not tell anyone of the abuse prior to being questioned by the police. A psychologist offering an affidavit on appellant's behalf explained that "sexual abuse victims often suffer from confusion, guilt and self-blame which preclude them from realizing that they have

been victimized by the trusting adult authority figure." As in *Blackowiak* and *W.J.L.*, we are left with no evidence of when appellant knew he was injured other than his silence and its roots in the confusion, guilt, and shame that he suffered. But silence does not represent a special cause to delay the running of the statute of limitations. *W.J.L.*, 573 N.W.2d at 682. And delay is not justified by evidence of confusion, guilt, or self-blame. *Id.; Blackowiak*, 546 N.W.2d at 3. Moreover, as respondent City of Minneapolis contends, appellant's silence was not easily broken when he was confronted on August 30, 1989, which he attributes to his concern that Luckow would be sent to prison. This concern having arisen immediately upon the confrontation of appellant, it is evident that appellant was well aware that Luckow's conduct was improper.

■ Appellant attempts to distinguish prior authority by suggesting that victims do not know they have been injured due to sexual abuse prior to appreciating that the perpetrator is a wrongdoer. Appellant's psychologist explains that it often takes a great deal of time for "victims of sexual abuse to understand or even suspect that they were victimized," again, because they suffer from confusion, guilt, and self-blame. The expert proffers that wrongdoing is not understood when attributed to a person in a position of trust and authority. This distinction is unsupported and specifically refuted by the reasoning in *Blackowiak*. The victim's absolution of the perpetrator does not eliminate knowledge of sexual abuse. Rather, as explained in the record here, it reflects guilt and self-doubt, which for a reasonable person is a recognition of injury. *See id.* (victim of sexual abuse should have known he had been injured at point he recognized that he did not discuss abuse with counselor because of shame).

### 2.

■ In the present case, the majority of appellant's abuse occurred during a period of legal disability—his state of infancy prior to his 18th birthday on July 15, 1989. Although he was abused as an adult for 40 days, he was abused as a child for several years. Appellant suggests that he has seven years after he becomes an adult to bring a suit on the childhood abuse. The seven years includes six years under Minn.Stat. § 541.073, subd. 2(a) (1996) (governing actions for damages due to sexual abuse), and one year under Minn.Stat. § 541.15(a)(1) (1996) (the infancy rule). This proposition represents a misconstruction of section 541.15(a).

Under Minn.Stat. § 541.15(a) (1996), the circumstance of childhood "suspend[s] the running of the period of limitation" until the child becomes age 18. Added to this statute is the declaration that "such period" shall not be extended, in the case of infancy, "for more than one year after the disability ceases." [1] In the circumstances of this case, appellant's infancy disability provides him no advantage for an action commenced after July 15, 1990, his 19th birthday. His limitation period is shorter under the one-year infancy rule than under the six-year statute of limitations, which began running no sooner than August 24, 1989.

Our understanding of the language of the statute is prompted by case law that has applied the one-year rule for disabilities, determining that the "period of limitations" ends after expiration of the maximum period (one year for the infancy disability) for which it is "extended" under the statute; the limitations period is not added to the extension period. *See, e.g. Langer v. Newmann*, 100 Minn. 27, 29, 110 N.W. 68, 69 (1907) (party to action is not entitled to bring action any time within period of limitation after disability ceases "but, on the contrary, [the statute] expressly provides that the *period of limitation* in no case shall be extended by any disability for more than one year after disability ceases * * * [t]here can be no extension of the *period of limitation* beyond one year after the disability has been removed")

---

1. More completely, the statute provides that a number of disabilities, including infancy, "shall suspend the running of the *period of limitations* until the same is removed; provided that *such period*, except in the case of infancy, shall not be extended for more than five years, nor in any case for more than one year after the disability ceases." Minn.Stat. § 541.15(a) (1996) (emphasis added).

(emphasis added); *Voegele v. Mahoney,* 237 Minn. 43, 49, 54 N.W.2d 15, 19 (1952) (if when adverse possession action accrues the claimant is an infant, "the running of the *period of limitation* is suspended for not more than one year after the disability ceases") (emphasis added); *Anderson v. Lutheran Deaconess Hosp.,* 257 N.W.2d 561, 562 (Minn.1977) (where statutory period for bringing a medical malpractice suit expired while plaintiff was a minor and statute of limitations would have run before he reached the age of majority, statute operated to provide a one-year period after reaching the age of majority within which to commence suit); *see generally* 30 Dunnell Minn. Digest *Limitation of Actions* § 2.05(a) (4th ed.1996) (certain disabilities suspend the running of the period of limitation, but "[t]he period is extended in no case for more than one year after the disability ceases"); *see also Lelm by Lelm v. Mayo Found.,* 135 F.3d 584, 587–89 (8th Cir.1998) (contrasting section 541.15(a), which the 8th Circuit court says limits maximum extension of the "limitations period," with the later-enacted section 541.15(b) (1996), which limits the extension of the "suspension" of the limitation period (for certain health care suits); the former working to bar a cause of action when the extension period ends and the latter providing for the full running of the period of limitations after the extension period ends).

Urging a different construction of section 541.15(a)(1), appellant points to language in *W.J.L.* In that case, W.J.L. initiated an action in 1995, 14½ years after the abuse ended in 1980, which was more than one year after W.J.L. became an adult in 1979. *See W.J.L. v. Bugge,* C6-96-1619, 1997 WL 30721, unpub. op., at *1, *7 (Minn.App. Jan. 28, 1997) (Randall, J. concurring in part, dissenting in part) (reporting facts of the case). The supreme court denied W.J.L. any extension of the statute of limitations premised on the absence of knowledge she had suffered injury due to sexual abuse. *W.J.L.,* 573 N.W.2d at 682. As a result, according to the court's holding, the statute had expired long before the suit was instituted in 1995. Commenting in these circumstances about the running of the statute of limitations, exclusive of section 541.073, the court observed that the limita-

tions period under the sexual abuse statute "would have begun to run one year after W.J.L. reached the age of majority and expired when she turned 25." *Id.* (citing Minn. Stat. § 541.15(a)(1)). Troublesome as this observation may be, we are unpersuaded that it represents a reinterpretation of section 541.15(a)(1) and an overruling of over 90 years of decisions on the impact of the one-year extension in the event of infancy. The determination of the precise statute of limitations date was not necessary to the decision of *W.J.L.* and nothing suggests that either party raised the infancy exception.

Appellant contends that the infancy language in *W.J.L.* should be viewed as a construction of section 541.073. But this assertion ignores the fact that the supreme court attributed its observation to section 541.15(a)(1). In any case, no construction of section 541.073 is helpful in the immediate situation without adding to its six-year limitation period the one year provided for in section 541.15(a)(1). From the date of appellant's majority on July 15, 1989, the six-year period expired on July 15, 1995, over a month before this suit was commenced. The quoted language from *W.J.L.* cannot be given the significance of adding one year to the delayed discovery statute unless it is viewed as a redetermination of the law under Minn. Stat. § 541.15(a)(1).

## DECISION

Because there are no disputed issues of material fact regarding the expiration of the statute of limitations, and because the trial court correctly applied the law, we affirm the summary judgment and decline to reach respondent's contentions on other claims for the same relief.

**Affirmed.**

LANSING, Judge (concurring specially).

I concur in the result.